

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00684-CR

James Harley **STACY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2015CR7238A
Honorable Lori I. Valenzuela, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 31, 2018

AFFIRMED

James Harley Stacy was convicted by a jury of aggravated kidnapping and sentenced by the trial court to forty-five years' imprisonment.  On appeal, Stacy contends the trial court erred in denying his motion to set aside the indictment and in submitting an erroneous jury charge because the indictment and the jury charge combined multiple manner and means of committing the offense of aggravated kidnapping as well as multiple aggravating circumstances.  Stacy also contends the trial court abused its discretion in admitting into evidence testimony regarding two of his tattoos and his explanation of the tattoos' meanings.  We affirm the trial court's judgment.

## BACKGROUND

The complainant, an admitted heroin addict, was arrested for possession of a controlled substance. After she was released from jail, she met Natalie Hatcher and Stacy, Natalie's boyfriend/fiancé. Through the course of the next several days, the complainant, Hatcher, and Stacy used drugs together, staying at various locations and using the complainant's vehicle for transportation.[1]

At some point, the complainant returned home without her cell phone, and the complainant's mother gave the complainant her cell phone to take with her. Later that day, the complainant, Hatcher, and Stacy were kicked out of the hotel where they were staying and drove approximately one and a half hours to Stacy's father's house. During that trip, the complainant, who was blindfolded in the rear passenger seat, hit Stacy, who was driving, in the back of the head because her drug-induced delusions made her believe Stacy had raped her girlfriend and taken her to Laredo. Hatcher climbed from the front passenger seat to the rear seat and physically restrained the complainant with cords and handcuffs. Hatcher also hit the complainant and banged her head against the window in an effort to keep her quiet. At one point during the trip, the complainant and Hatcher both testified Stacy sexually assaulted the complainant while she was restrained and punched her in the mouth when she screamed, breaking her jaw and leaving her two front teeth dangling in her mouth. On cross-examination, however, Hatcher admitted she stated she was the person who beat up the complainant in a letter and phone call to her mother and also wrote letters stating she did not want Stacy to go to prison for something he did not do.

Sometime after the complainant was assaulted, Hatcher agreed to meet the complainant's mother and return her cell phone. The complainant's parents requested the assistance of a San

---

[1] The complainant's girlfriend was also present for the first few days.

Antonio police officer who was a friend. The complainant's parents met Hatcher in a parking lot, and she returned the cell phone but left before the officer arrived. When the officer arrived, he suggested the complainant's parents follow him in their car to various nearby hotels which were known to be locations where drug users would stay. After they had driven through various locations and were discussing their next course of action, the complainant's mother spotted the complainant's car. Stacy was driving the car, and the complainant was in the front passenger seat visibly high on drugs. The officer executed a traffic stop and began questioning Stacy. When the complainant's mother approached her daughter and saw her injuries, the complainant told her mother that Stacy had raped her.

Stacy and Hatcher were both arrested and charged with aggravated kidnapping. Hatcher subsequently agreed to testify against Stacy as part of a plea bargain agreement which reduced the charge against her to kidnapping with the possibility of shock probation in six months.

After hearing all the evidence, the jury found Stacy guilty of aggravated kidnapping, and the trial court sentenced him to forty-five years' imprisonment. Stacy appeals.

## INDICTMENT AND JURY CHARGE

Stacy filed a pre-trial motion to set aside the indictment, asserting the indictment combined, in a single count and paragraph, multiple manner and means of committing the offense of aggravated kidnapping, as well as multiple aggravating circumstances. Stacy also objected to the jury charge on the same basis, asserting a general verdict of guilty would result in uncertainty regarding whether the jury unanimously found he had committed the offense of kidnapping with the intent to sexually violate or abuse the complainant. Specifically, Stacy asserts the indictment and jury charge allowed him to be convicted if he committed the offense of kidnapping aggravated by one of the following circumstances: (1) inflicting bodily injury on the complainant; (2) violating or abusing the complainant sexually; or (3) using or exhibiting a deadly weapon during the

commission of the offense. *See* TEX. PENAL CODE ANN. § 20.04(a)(4), (b) (West 2011). Stacy argues unanimity was required on whether he committed the offense by violating or sexually abusing the complainant because he would be required to submit to sex offender registration only if he committed the offense in that manner.

In his brief, Stacy acknowledges aggravated kidnapping is a result-oriented offense, and the "allowable unit of prosecution" correlates to each victim abducted. *See Gonzales v. State*, 270 S.W.3d 282, 288 (Tex. App.—Amarillo 2008, pet. ref'd). Stacy further acknowledges jury unanimity generally is not required on any specific manner or means because the State may plead alternate manner and means of committing a single offense when a statute provides for different modes and means of committing the offense. *Jefferson v. State*, 189 S.W.3d 305, 312-13 (Tex. Crim. App. 2006); *Rangel v. State*, No. 04-09-00576-CR, 2010 WL 2183904, at *2 (Tex. App.— San Antonio June 2, 2010, no pet.) (mem. op., not designated for publication). However, Stacy argues the general rule does not apply in his case because one of the aggravating circumstances alleged by the State and included in the jury charge was violating or abusing the complainant sexually. If the jury found Stacy committed the offense in this manner, Stacy would be required to submit to sex offender registration. Citing the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Stacy argues the jury was required to unanimously determine whether he committed the offense by violating or abusing the complainant sexually because the sex offender registration requirement increased his punishment.

The Texas Court of Criminal Appeals has explained the application of *Apprendi* as follows:

> The Supreme Court determined in *Apprendi v. New Jersey* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." [530 U.S. 466, 490 (2000)]. As Justice Scalia later explained for the Supreme Court in *Blakely v. Washington*, the statutory maximum in this context means the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." [542 U.S. 296,

303 (2004)].  Thus, the *Apprendi* line of cases requires that, in any case in which the defendant has elected to exercise his Sixth Amendment right to a jury trial, any discrete finding of fact that has the effect of increasing the maximum punishment that can be assessed must be made by the jury, even if that fact-finding occurs as part of the punishment determination.

*Barrow v. State*, 207 S.W.3d 377, 379 (Tex. Crim. App. 2006) (emphasis in original).  Therefore, in determining whether *Apprendi* applies in this case, we must determine whether Stacy's commission of the offense by violating or sexually abusing the complainant sexually was a fact that increased Stacy's statutory maximum punishment.

In addressing whether the sex offender registration requirement violated the Ex Post Facto Clauses of the United States and Texas Constitutions, the Texas Court of Criminal Appeals held that the registration requirement is civil and remedial in nature; therefore, the registration requirement is not considered to be punishment.  *Rodriguez v. State*, 93 S.W.3d 60, 65, 67, 79 (Tex. Crim. App. 2002); *see also Hernandez v. State*, No. 04-04-00020-CR, 2004 WL 1195833, at *1 (Tex. App.—San Antonio June 2, 2004, no pet.) (mem. op., not designated for publication) (recognizing sex offender registration requirement does not constitute punishment).  Accordingly, because Stacy's duty to register in this case did not increase his punishment beyond the statutory maximum, the jury was not required to unanimously determine the aggravating circumstance of his offense under the *Apprendi-Blakely* rule.  *See, e.g.*, *Walton v. Prelesnik*, No. 13-12797, 2015 WL 7351782, at *6-7 (E.D. Mich. Nov. 20, 2015) (concluding requirement that individual register as a sex offender did not violate the *Apprendi-Blakely* rule because registration requirement was not intended to punish sex offenders); *Silva v. Idaho*, No. CV 08-531-S-REB, 2010 WL 529495, at *3–4 (D. Idaho Feb. 8, 2010) (same); Victory v. Lewis, No. C 03-1061 JSW (PR), 2008 WL 3926406, at *37 (N.D. Cal. Aug. 25, 2008) (same).  Therefore, Stacy's first and second issues are overruled.

**EVIDENCE REGARDING TATTOOS**

In his third issue, Stacy contends the trial court abused its discretion in admitting the testimony of a sexual assault nurse examiner (SANE) describing two of his tattoos and the explanation he gave the SANE nurse about the tattoos. Stacy asserts the probative value of the evidence was substantially outweighed by its prejudicial effect under Rule 403 of the Texas Rules of Evidence.

"Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010); *see also* TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis*, 329 S.W.3d at 806. "Probative value" "'refers to the inherent probative force of the evidence — that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation — coupled with the proponent's need for that item of evidence.'" *Id*. (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "Unfair prejudice" "'refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id*. (quoting *Casey*, 215 S.W.3d at 880). All testimony is likely to be prejudicial to one party or the other, and evidence should be excluded under Rule 403 only when a clear disparity exists between the degree of prejudice of the offered evidence and its probative value. *Id*.

We review a trial court's ruling admitting evidence over a Rule 403 objection under an abuse of discretion standard. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *McCallum v. State*, 311 S.W.3d 9, 14–15 (Tex. App.—San Antonio 2010, no pet.). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz*, 279 S.W.3d at 343–44. A

proper Rule 403 analysis by either the trial court or a reviewing court includes, but is not limited to, the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; (4) the proponent's need for the evidence. *Jenkins v. State*, 493 S.W.3d 583, 608 (Tex. Crim. App. 2016).

When the State sought to introduce evidence regarding Stacy's numerous tattoos, Stacy's attorney objected that the evidence was unfairly prejudicial under Rule 403. The trial court excluded all of the photographs of the tattoos and allowed the State to elicit testimony from the SANE nurse who examined Stacy about only two of Stacy's many tattoos and Stacy's description to her of what the tattoos meant to him.[2] One of the tattoos was of a wolf, and Stacy told the SANE nurse the wolf was "how I see me." The SANE nurse described the second tattoo as a "[c]ircumferential black tattoo over [Stacy's] entire left lower leg,"[3] and Stacy described that tattoo as being a "sexual fantasy, S&M type of thing, tying people up." On re-direct examination, the SANE nurse was asked what S&M meant, and the SANE nurse testified without objection that it meant "[t]he act of harming others and getting pleasure from it."

Applying the first and fourth balancing factors, the evidence regarding the second tattoo was probative to show Stacy had a fantasy of tying people up to engage in sex. *See Conner v. State*, 67 S.W.3d 192, 201 (Tex. Crim. App. 2001) ("A defendant's choice of tattoos, like his personal drawings, can reflect his character and/or demonstrate his motive for his crime."); *King v. State*, 29 S.W.3d 556, 559-60, 565 (Tex. Crim. App. 2000) (noting graphic tattoos, including a tattoo of "a black man with a noose around his neck hanging from a tree," were probative of defendant's motive to kill the complainant because of his race). With regard to the first tattoo, the

---

[2] The SANE nurse testified that during every examination, she documents the person's tattoos and asks the person to describe what the tattoos mean to that person.

[3] In his brief, Stacy describes the tattoo as a naked woman bound in chains; however, that was not the description given by the SANE nurse during her testimony.

State argued during closing argument, again without objection, that the wolf is a predator and likened Stacy's actions to that of a predator. Because there was conflicting evidence as to whether Hatcher physically assaulted the complainant or whether Stacy physically assaulted her while sexually assaulting her, the evidence was needed to assist in establishing Stacy was the person who physically and sexually assaulted the complainant. Thus, the trial court could have concluded the first and fourth prongs of the balancing test weighed in favor of admitting the evidence.

Applying the second factor, the trial court could have concluded the tendency of the brief testimony to impress the jury in some irrational, yet indelible, way was slight, and nothing in the record suggests the evidence caused the jury to behave irrationally. *See Hart v. State*, 173 S.W.3d 131, 149 (Tex. App.—Texarkana 2005, no pet.) (holding trial court did not abuse its discretion in admitting photographs of tattoos of nude women on defendant's thighs during prosecution for aggravated sexual assault because appellate court did not believe the tattoos "would necessarily sway a jury into resolving the case based on emotion rather than reason"). Finally, applying the third factor, the testimony about the tattoos spanned only a few pages of the three-volume reporter's record of the guilt/innocence phase of trial. Therefore, minimal time was needed to develop the evidence.

Having considered the factors the trial court was required to balance in deciding to admit the evidence under Rule 403, we cannot conclude the trial court abused its discretion in admitting the testimony. Stacy's third issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice

DO NOT PUBLISH