

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00079-CR

Derek **ATKINS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Atascosa County, Texas
Trial Court No. 31690
Honorable Lynn Ellison, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
            Marialyn Barnard, Justice
            Rebeca C. Martinez, Justice

Delivered and Filed:  April 4, 2018

AFFIRMED

Derek Atkins was convicted by a jury of making silent or abusive calls to 9-1-1 service. On appeal, Atkins contends the trial court abused its discretion in overruling his objections to two exhibits introduced into evidence by the State.  We affirm the trial court's judgment.

## BACKGROUND

Around midnight on August 16, 2015, two officers, Sergeant Wilson Butler and Officer William Permenter, were dispatched to Atkins's house in response to several calls made to 9-1-1 from the same phone number in which the caller hung up several seconds after the dispatcher

answered the call. After the third hang-up call, the dispatcher returned the call, and Atkins told the dispatcher he heard a noise outside his house. Two additional hang-up calls were made before the officers arrived at Atkins's house.

When the officers arrived, they did not see anyone in the area around Atkins's house. Atkins admitted placing one call because he heard something outside but stated the other calls were "butt dialed." Neither of the officers believed Atkins's statements. One of the officers instructed Atkins not to "butt dial" 9-1-1 again, and the officers left.

At 1:25 a.m. and 2:00 a.m. on August 17, 2015, two additional calls were made from the same phone number, and the caller again hung up several seconds after the dispatcher answered. Officer Permenter returned to Atkins's home and arrested him for making silent calls to 9-1-1 service. Officer Permenter testified Atkins said he "butt dialed" those calls also.

At trial, the officers testified regarding being dispatched to Atkins's house, their encounter with Atkins, and his subsequent arrest. In addition, Jymie Perna, the communications supervisor for the Atascosa County Sheriff's Office, provided background details regarding the 9-1-1 service and how it operates. Perna explained the 9-1-1 dispatcher is provided the phone number and the address from which the call is placed. If the call is placed from a cell phone, the 9-1-1 system pinpoints the location of the call within 300 feet. Perna further explained a separate system called the Odyssey system can be used to look up the address identified by the 9-1-1 system to determine if any other information is linked to the address. If the address is linked to the name of a person who has been arrested, the system will provide a criminal justice history and the person's personal data. Finally, Perna explained all information relating to 9-1-1 calls are stored in a computer system called the Aurora system which can be used to run reports.

Perna identified State's Exhibit 1 as a report from the Aurora system showing 9-1-1 calls made from the same phone number used by Atkins on August 16-17, 2015. The report showed 64

incoming calls were made from the phone number between January 28, 2015 and September 13, 2016. Atkins's attorney objected to the admission of the exhibit under Rule 403 of the Texas Rules of Evidence. The trial court overruled the objection, and the exhibit was admitted into evidence.

Perna also identified State's Exhibit 5 as a party data sheet from the Odyssey system. The exhibit contained a mug shot of Atkins and identified his phone number as the same number from which the 9-1-1 calls were placed. Atkins's attorney asserted the exhibit "show[ed] a mugshot" and objected "to the prejudicial value of the picture." The trial court overruled the objection, and the exhibit was admitted into evidence.

During the jury's deliberations, the jury requested the trial court to provide the jury with State's Exhibit 1. The trial court complied with this request. After additional deliberations, the jury returned a verdict finding Atkins guilty of the charged offense. The trial court sentenced Atkins to 180 days in jail, but suspended the sentence and placed Atkins on twenty-four months of community supervision. Atkins appeals.

## STANDARD OF REVIEW

Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. We review the trial court's decision to admit evidence, as well as its decision as to whether the danger of unfair prejudice substantially outweighed the probative value of the evidence, under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Therefore, in determining whether the danger of unfair prejudice substantially outweighs the probative value of the evidence, we do not conduct a de novo review and we "should reverse the judgment of the trial court rarely and only after a clear abuse of discretion." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) (internal quotation omitted).

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009); *McCallum v. State*, 311 S.W.3d 9, 15 (Tex. App.—San Antonio 2010, no pet.). Rule 403 "envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer*, 296 S.W.3d at 568 (internal quotation omitted).

In determining whether the admission of relevant evidence violates Rule 403, a trial court must balance the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence against: (1) any tendency of the evidence to suggest decision on an improper basis; (2) any tendency of the evidence to confuse or distract the jury from the main issues; (3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence; and (4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The objecting party bears the burden to show the danger of unfair prejudice substantially outweighs the probative value of the evidence. *Tucker v. State*, 456 S.W.3d 194, 207 (Tex. App.—San Antonio 2014, pet. ref'd).

### STATE'S EXHIBIT 5

In his first issue, Atkins contends the trial court abused its discretion in overruling his Rule 403 objection to the admissibility of the party data sheet. In his brief, Atkins contends the exhibit was unfairly prejudicial because it included a mug shot of Atkins and an FBI number. At trial, however, Atkins's attorney did not object that the inclusion of the FBI number made the exhibit prejudicial. Instead, Atkins's attorney only objected to the prejudicial value of the mug shot. Therefore, we only address whether the trial court overruled the objection to the exhibit because it

included a mug shot. *See* TEX. R. APP. P. 33.1 (requiring complaint to be preserved for appellate review by an objection stating the specific grounds for the ruling).

"'[P]robative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Gigliobianco*, 210 S.W.3d at 641. When the proponent of the evidence has other compelling or undisputed evidence to establish the proposition or fact that the evidence goes to prove, the probative value of the evidence will weigh far less than it otherwise might in the probative-versus-prejudicial balance. *Id*.

In his brief, Atkins acknowledges the exhibit connected Atkins to the phone number used to call 9-1-1; however, he argues the need for the evidence was minimal because the 9-1-1 system linked the phone number to the address where the officers questioned Atkins and later arrested him. In addition, Atkins admitted calling 9-1-1 from his phone. Therefore, although the evidence was probative, the State did not need the evidence.

"Unfair prejudice does not arise from the mere fact that evidence injures a party's case." *Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007). "Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Id*. Unfair prejudice "refers to a tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641.

In arguing States Exhibit 5 was overly prejudicial, Atkins asserts "there was no evidence that the mug shot in State's Exhibit 5 was taken when Atkins was arrested for the offense charged in this case." Perna testified, however, that the party data sheet was printed by him on October 6, 2016 "[f]or the purpose of this case." Since Atkins was arrested for the offense for which he was on trial and Perna testified the party data sheet was printed "[f]or the purpose of this case," the

exhibit does not suggest, as Atkins contends, that Atkins had "prior run-ins with the law." *See Hollis v. State*, 219 S.W.3d 446, 466 (Tex. App.—Austin 2007, no pet.) ("A defendant's mug shot taken at the time of his arrest for the offense being tried is admissible because its danger of introducing an extraneous offense is vitiated.").[1] Therefore, we cannot say the exhibit had a tendency to suggest that the jury make a decision on an improper basis. In addition, the State's introduction of the exhibit was straightforward and did not distract the jury by taking an inordinate amount of time. Finally, there is nothing in the record to suggest the jury was not equipped to evaluate the probative force of the evidence or would have any tendency to give the exhibit undue weight. Therefore, after balancing the various factors, we hold the trial court could have reasonably concluded the probative value of the exhibit was not outweighed by the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion by admitting the exhibit.

### STATE'S EXHIBIT 1

In his second issue, Atkins argues the trial court erred in admitting the phone log identifying sixty-four phone calls made to 9-1-1 from January 28, 2015 to September 13, 2016, from the same phone number used by Atkins on the date of the offense. Although Atkins acknowledges the evidence was probative and necessary to rebut the theory that Atkins unintentionally called 9-1-1, Atkins suggests the State could have shortened the period of time encompassed by the exhibit so the evidence would be less prejudicial.

In order to prove Atkins was guilty of the charged offense, the State had the burden to prove the phone calls were knowingly and intentionally made. *See* TEX. PENAL CODE ANN.

---

[1] We note defense counsel did not object to the exhibit on the basis that the mug shot was from a prior offense. *See Hollis*, 219 S.W.3d at 466 (noting mug shot obtained from a prior offense is frequently inadmissible as providing prejudicial evidence of an extraneous offense). After the exhibit was admitted, defense counsel questioned Perna about whether the Odyssey system identified Atkins's name associated with the address because he had called 9-1-1 before, and Perna responded "[t]hat or he was being arrested before." Defense counsel did not re-urge his objection after this testimony.

§ 42.061(a) (West 2016). Under the facts in this case, the State was required to prove Atkins knowingly and intentionally made the 9-1-1 calls as opposed to innocently "butt dialing" 9-1-1.

The doctrine of chances is "'the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element [i.e. innocent intent] cannot explain them all.'" *Sifuentes v. State*, 494 S.W.3d 806, 816 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Plante v. State*, 692 S.W.2d 487, 491 (Tex. Crim. App. 1985)); *see also Brown v. State*, 96 S.W.3d 508, 512 (Tex. App.–Austin 2002, no pet.) (same). "For the doctrine to apply, there must be a similarity between the charged and extraneous offenses, since it is the improbability of a like result being repeated by mere chance that gives the extraneous offense probative weight." *Brown*, 96 S.W.3d at 512.

Because Atkins told the officers several of the phone calls were "butt dialed," evidence of the numerous other 9-1-1 calls from the same phone number following a pattern of the phone call being abandoned or requiring the 9-1-1 operator to return the phone call was both very probative and very necessary for the State to prove Atkins knowingly and intentionally made the phone calls resulting in the charged offense. Furthermore, because the "doctrine of chances" permits the jury to consider the other phone calls in determining if the phone calls in question were knowingly and intentionally made, the evidence did not confuse or distract the jury from the main issues, and the introduction of the exhibit did not take an inordinate amount of time. Finally, there is nothing in the record to suggest the jury was not equipped to evaluate the probative force of the evidence. Therefore, given the highly probative nature of the evidence and the State's need to rebut the theory that the phone calls were unintentionally made, the trial court could have reasonably concluded the probative value of the exhibit was not outweighed by the danger of unfair prejudice. Accordingly, the trial court did not abuse its discretion by admitting the exhibit.

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

DO NOT PUBLISH