*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-08-00844-CR

Michael **MCCALLUM**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-0772
Honorable Catherine Torres Stahl, Judge Presiding

Opinion by:      Marialyn Barnard, Justice

Sitting:      Karen Angelini, Justice
             Steven C. Hilbig, Justice
             Marialyn Barnard, Justice

Delivered and Filed: January 27, 2010

AFFIRMED AS REFORMED

        A jury found appellant Michael McCallum guilty of criminally negligent homicide, and

assessed punishment at confinement for eighteen years.   McCallum does not challenge the

sufficiency of the evidence; instead, he raises three procedural complaints: the trial court erred in (1)

denying his request for an accomplice-witness instruction in the jury charge, (2) admitting evidence

indicating McCallum was a member of the Aryan Brotherhood, and (3) assessing punishment beyond

the prescribed statutory maximum. He contends alternatively that if we hold his second issue is waived because of an inadequate objection, his counsel was ineffective for failing to object properly. The State raises a cross point, asking that we reform the judgment to properly reflect the jury's finding that McCallum committed the offense with a deadly weapon. We affirm the trial court's judgment as reformed with regard to the deadly weapon finding.

## BACKGROUND

On the evening of August 5, 2004, McCallum and his stepson, Alex, walked to a convenience store to buy beer. When they got there, Thomas Pribyl, who appeared to be intoxicated, approached them and offered to give McCallum Xanax if McCallum would purchase beer for him. After McCallum bought Pribyl some beer, the three men walked to Pribyl's father's house to get the Xanax. Once at Pribyl's father's house, the men stayed in the driveway drinking beer and talking. Pribyl and McCallum each mentioned they had been to prison. McCallum pulled off his shirt and showed Pribyl several tattoos. In response, Pribyl showed McCallum his small swastika tattoo. Soon after, Pribyl went into the house to get the Xanax. While Pribyl was inside, McCallum told Alex he did not believe Pribyl had actually served time, and he thought Pribyl had done the tattoo himself. Once Pribyl returned with the bottle of Xanax, McCallum offered to trade methadone for more Xanax, and Pribyl agreed.

The three men then set out on foot for McCallum's home. About the time they approached McCallum's street, McCallum confronted Pribyl, stating "I don't think you are who you say you are." Pribyl appeared confused and asked McCallum what he was talking about. According to Alex's testimony, McCallum then turned around and punched Pribyl in the head. Alex testified the

attack was unprovoked. Alex said Pribyl then "went completely stiff and just fell back, fell straight back" "like a board" as if he were "out cold before he even hit the ground . . . ." After Pribyl hit the ground, he did not move. At first, McCallum and Alex continued walking, leaving Pribyl in the street. However, McCallum soon suggested they go back and check on Pribyl. When they returned, they found Pribyl sitting on the curb, slumped over; he appeared dazed. McCallum asked Pribyl, "Hey man, what happened? Are you all right? What happened there?" Pribyl did not respond coherently, but McCallum helped him up, and the trio again began walking together towards McCallum's house "as if nothing happened."

Alex testified that Pribyl had a box cutter in his hand, but was not threatening any one with it. Nevertheless, in an aggressive tone McCallum asked Pribyl, "Are you going to cut me with that?" McCallum then took the box cutter away from Pribyl and put it in his pocket. The men continued walking, but Alex stated Pribyl was "just kind of stumbling along." Fifteen yards down the road, McCallum again struck Pribyl in the head. Alex testified that Pribyl again fell "[c]ompletely straight, like a board." After Pribyl hit the ground he was completely still. Alex said that this time he kept walking, and admitted that at no time did he try to help Pribyl nor did he call 911. He claimed he did not want to show weakness in front of McCallum.

Alex said McCallum was quiet as they walked the rest of the way to the house. When they got to the house, McCallum told his wife Natalie, "I hit a guy who was false-claiming." McCallum told her he "laid him out." At this point, Alex went to bed, but McCallum went back outside. He returned after twenty minutes. Natalie testified that when he returned he was upset, believing Pribyl

might be dead. Natalie said he left again, and this time he was gone for almost two hours. However, when he returned he was no longer worried that Pribyl might have died.

The evidence showed that at some point Pribyl got up. He walked to a house and started banging on the door. The resident called police. Police, as well as Pribyl's father and brother, eventually arrived. Pribyl's family took him home and put him on the couch. However, the next day his father could not wake him up. Pribyl's father called 911, and Pribyl was taken to the hospital.

At the hospital, Pribyl was taken to surgery. After the surgery, doctors told Pribyl's family that he had suffered "severe brain damage and brain trauma," and they did not believe he would recover. After several days, Pribyl was taken off of life support; he died almost immediately. The hospital records showed Pribyl died of a "cerebral potine hemorrhage."

At trial, medical examiner Kimberly Molina testified that the type of injury suffered by Pribyl occurs when "the brain kind of smooshes over" into the area that talks to the rest of the body. She stated the cause of death was head trauma, and Pribyl's injuries were consistent with being hit in the head and then falling to the ground. Molina said that in her opinion the cause of death was "[b]lunt force trauma to the head," and the manner of death was homicide.

Natalie testified that several days after McCallum hit Pribyl, McCallum gave her a bracelet. McCallum told Natalie he wanted her to take the bracelet to a pawn shop. Natalie stated she thought the bracelet might have belonged to one of McCallum's many girlfriends. She did as McCallum asked and pawned the bracelet. Thereafter, Natalie said she began getting telephone calls from a detective. Police had recovered the bracelet from the pawn shop – it belonged to Pribyl.

Alex testified that the day after the attack on Pribyl, McCallum gave him a wallet. Alex stated he believed it was Pribyl's wallet. Alex put it on his dresser; Natalie admitted seeing it there. After Alex was questioned by police about Pribyl, McCallum told Alex the wallet belonged to Pribyl, and told Alex to get rid of it. Alex threw it into the yard of a vacant home after wiping it down. It was never recovered.

For approximately two years, neither Natalie nor Alex assisted police in their investigation. Eventually, Natalie was given immunity in exchange for her agreement to testify truthfully. She appeared before the grand jury and at trial. As for Alex, McCallum had given him a story to tell police – that after they left Pribyl's house, Pribyl went off in the direction of the convenience store and that was the last time they saw him. According to Alex, McCallum threatened him, so Alex admitted that he stuck to the story McCallum told him to tell until he was called to testify before the grand jury. Alex then, and at trial, testified about McCallum's attack on Pribyl. Alex denied hitting Pribyl, and denied planning any assault on Pribyl.

## DISCUSSION

### *Jury Charge*

McCallum first contends the trial court erred when it refused his request for article 38.14 accomplice-witness instructions regarding Alex and Natalie. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005) (stating conviction cannot be had upon testimony of accomplice unless corroborated by other evidence tending to connect defendant with offense). McCallum argues there was evidence that Alex and Natalie were accomplices. He asserts both Alex and Natalie "could be considered parties" to the crime "because they both gave false police reports on several occasions."

Additionally, "Alex destroyed evidence by getting rid of the victim's wallet," and "Natalie was aware of the wallet on Alex's dresser . . . and pawned a bracelet within days of being told about the assault." Based on their testimony, McCallum concludes a jury could have determined Natalie and Alex "were simply protecting each other from prosecution," and that "[r]ational jurors could have found the State's case less persuasive had they been properly instructed that they could not accept Alex's testimony without corroboration from other evidence tending to connect McCallum to the offense."

We review the trial court's decision to deny a request for an accomplice-witness instruction under an abuse of discretion standard. *See Paredes v. State*, 129 S.W.3d 530, 538 (Tex. Crim. App. 2004). A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). If the appellate court determines the trial court erred regarding the jury charge, it must then evaluate the harm caused by the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) If there was no objection in the trial court and the alleged error is raised for the first time on appeal, the appellant must show egregious harm to obtain relief. *Id.* If error is preserved in the trial court, the appellant need only show some harm. *Id.* Harm is determined by reviewing the entire charge, the state of the evidence, arguments of counsel, and any other relevant information shown by the record. *Id.*

"An accomplice is someone who participates with [a] defendant before, during, or after the commission of the crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007); *see Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim App.

2006). Participation requires an affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* Simply having knowledge of the offense and not disclosing that information, or even trying to conceal the information, does not render a witness an accomplice. *Id.* Additionally, mere presence at a crime scene does not make an individual an accomplice. *Id.* There must be evidence sufficient to connect the alleged accomplice to the criminal offense as a "blameworthy participant." *Cocke* , 201 S.W.3d at 748.

A trial court is not required to give an accomplice-witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact. *Id*. A witness is an accomplice as a matter of law if, for instance, "the witness has been, or could have been, indicted for the same offense . . . ." *Id*. A witness is an accomplice witness as a matter of fact if "the parties present conflicting or unclear evidence as to whether a witness is an accomplice," in which case the jury must first determine whether the witness is an accomplice as a matter of fact. *Id*.

Here, there is no evidence to show that either Alex or Natalie "participated" with McCallum in the attack on Pribyl. *See Druery*, 225 S.W.3d at 498; *Cocke*, 201 S.W.3d at 748. The record shows Alex was present during the attack, concealed his knowledge of the crime from police, and disposed of evidence by throwing out Pribyl's wallet. These things, however, do not make him an accomplice to the offense of criminally negligent homicide–there is no evidence he did anything to promote the attack that led to Pribyl's death. *See id*. As to Natalie, the record shows Natalie pawned, at McCallum's behest, the victim's bracelet, and failed to cooperate with law enforcement until she was given immunity. These acts do not amount to participation in the crime—that is, her

acts did not promote the commission of the offense of criminally negligent homicide. *See id.* Additionally, her knowledge about the wallet on Alex's dresser at most amounts to knowledge about the crime, which alone is also insufficient to make her an accomplice. *See id.* Finally, any evidence suggesting both Alex and Natalie gave false police reports does not amount to evidence sufficient to connect Alex or Natalie to the criminal offense as "blameworthy participants." *See Cocke*, 201 S.W.3d at 748. Any false reports given were completely disconnected from actual participation with McCallum before, during, or after the commission of the crime. *See Druery*, 225 S.W.3d at 498; *Cocke*, 201 S.W.3d at 748. Therefore, the record does not support that Natalie or Alex could have been indicted for the same offense.

Based on the record, it is clear that neither Alex nor Natalie were accomplices as a matter of fact or as a matter of law. Accordingly, the trial court was not required to give an accomplice-witness instruction. *See Cocke*, 201 S.W.3d at 748. We therefore hold the trial court did not err in refusing to give the requested instruction, and we overrule McCallum's first issue.

### *Admission of Evidence*

McCallum next contends the trial court erred in admitting evidence that he was a member of the Aryan Brotherhood. McCallum asserts the evidence should not have been admitted because it was irrelevant, and its probative value was substantially outweighed by the danger that it would unfairly prejudice the jury. *See* TEX. R. EVID. 401, 403. In the alternative he argues that if his counsel failed to preserve this issue for review, he was ineffective.

Assuming McCallum preserved this issue for appellate review, we hold the trial court did not err in admitting the evidence.[1] We review a trial court's determination to admit evidence under rules 401 and 403 under an abuse of discretion standard. *See Russseau v. State*, 291 S.W.3d 426, 438 (Tex. Crim. App. 2009). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX. R. EVID. 401. Rule 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

When McCallum complained about the admission of evidence concerning his membership in the Aryan Brotherhood, the State advised the trial court that McCallum's membership went to the heart of the case because McCallum's membership in the Aryan Brotherhood was the motive for the attack on Pribyl. As Alex and Natalie testified, McCallum believed Pribyl was "false-claiming"

---

[1] The issue regarding McCallum's affiliation with the Aryan Brotherhood was raised in a pre-trial motion in limine. However, the trial court instructed McCallum's counsel that if it became an issue at trial, he should object and approach the bench. *See Geuder v. State*, 115 S.W.3d 11, 14-15 (Tex. Crim. App. 2003) (holding grant or denial of motion in limine is preliminary ruling and normally preserves nothing for appellate review). McCallum did raise one objection, stating "That's absolutely not fair. It's cumulative." These objections do not comport with his complaint on appeal. *See Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd.) ("An objection stating one legal basis may not be used to support a different legal theory on appeal."). Moreover, we find nothing in the record to suggest McCallum made a running objection to the evidence, and he certainly did not object when Natalie testified McCallum was a member of the Aryan Brotherhood. It could therefore be argued that McCallum waived this issue. *See* TEX. R. APP. P. 33.1.

regarding his prison involvement with other white supremacists. It was only after Pribyl claimed to have been in prison and showed McCallum the swastika tattoo that McCallum hit him.

Gang membership is admissible to show motive. *See, e.g., Vasquez v. State*, 67 S.W.3d 229, 239-40 (Tex. Crim. App. 2002) (holding defendant's affiliation to Mexican Mafia admissible to show motive for killing victim); *Williams v. State*, 974 S.W.2d 324, 331 (Tex. App.—San Antonio 1998, pet. ref'd) (defendant's gang affiliation admissible to show defendant's motive to rob victim). Accordingly, the evidence of McCallum's membership in the Aryan Brotherhood was relevant. McCallum's relevancy contention is therefore without merit.

As to his assertion that evidence of his membership in the Aryan Brotherhood was admitted in violation of rule 403, we disagree. "To violate Rule 403, it is not enough that the evidence is 'prejudicial'-it must be *unfairly* prejudicial." *Vasquez*, 67 S.W.3d at 240 (emphasis in the original). It is only "when the evidence has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'" that unfair prejudice exists. *Id*. (quoting *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)). The potential improper basis would be to attempt to show McCallum was a bad person and acted in conformity with that character simply because of his gang affiliation. However, that was not the State's purpose in eliciting the evidence. The State's purpose was to explain to the jury why McCallum would engage in an unprovoked attack on Pribyl. Without evidence of his membership in the Aryan Brotherhood, the jury would have been less able to understand McCallum's anger at Pribyl's alleged "false claiming" with regard to his prison time and gang affiliation. This evidence's probative value far outweighed its potential prejudice. Accordingly, we hold the trial court did not err in admitting the evidence.

With regard to his ineffective assistance of counsel claim, we hold it is without merit. To obtain relief for a claim of ineffective assistance of counsel, an appellant must meet the two-part test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Rylander v. State*, 101 S.W.3d 107, 109-10 (Tex. Crim. App. 2003). The appellant must first demonstrate trial counsel's performance was deficient because it fell below an objective standard of reasonableness. *Id.* (citing *Strickland*, 466 U.S. at 487). He must then show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

McCallum claims his counsel's performance was deficient because he failed to object properly to the admission of evidence regarding McCallum's membership in the Aryan Brotherhood. Counsel is not ineffective for failing to object to admissible evidence. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (holding that to establish ineffective assistance of counsel for failure to object during trial, appellant must show trial court would have committed error in overruling objection). We have determined this evidence was admissible. Because the evidence was admissible, McCallum could not show the trial court would have committed error in overruling a Rule 403 objection. Accordingly, McCallum has failed to establish the first prong of the *Strickland* test. *See Strickland*, 466 U.S. 487; *Rylander*, 101 S.W.3d at 109-110. We therefore overrule McCallum's second issue in its entirety.

### *Sentencing*

In his third point of error, McCallum claims the trial court erred when it found McCallum used a deadly weapon. At sentencing, an issue arose over whether the trial court would be permitted to consider enhancing McCallum's punishment based on his use of a deadly weapon. McCallum

objected, claiming he had not received adequate notice that a deadly weapon finding would be sought.[2] He further argued, as he does here, that pursuant to *Apprendi v. New Jersey*, the jury should have made that finding, and it violated his rights for the court to make the finding in the punishment phase. 530 U.S. 466, 490 (2000) (holding that other than fact of prior conviction, any fact that increases penalty for crime beyond prescribed statutory minimum must be submitted to jury and proved beyond reasonable doubt). The trial court overruled McCallum's objections, and denied his request for a continuance. At the end of the punishment phase, the trial court took into account McCallum's use of a deadly weapon, and sentenced McCallum accordingly.

McCallum was indicted for the offense of murder. The indictment alleged:

Count 1
Paragraph A
[O]n or about the 5th Day of August, 2004, MICHAEL MCCALLUM, did intentionally and knowingly cause the death of an individual, namely: Thomas Pribyl, by STRIKING THOMAS PRIBYL WITH THE HAND OF THE DEFENDANT AND BY CAUSING THOMAS PRIBYL TO FALL AND STRIKE HIS HEAD ON THE GROUND;

Paragraph B
And on or about the 5th day of August, 2004, MICHAEL MCCALLUM, with intent to cause serious bodily injury to an individual, namely: Thomas Pribyl, did commit an act clearly dangerous to human life that cause the death of Thomas Pribyl, by STRIKING THOMAS PRIBYL WITH THE HAND OF THE DEFENDANT AND BY CAUSING THOMAS PRIBYL TO FALL AND STRIKE HIS HEAD ON THE GROUND[.]

*See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). The indictment also contained an enhancement allegation, asserting that prior to the commission of the alleged murder, McCallum was convicted of the felony offense of attempted robbery.

---

[2] On appeal, McCallum does not contend he did not receive adequate notice that the State would seek a deadly weapon finding. Accordingly, we do not address notice.

Despite the State's assertion of murder, the jury was also instructed on the lesser included offenses of manslaughter and criminally negligent homicide. *See id.* § 19.04 (stating person commits offense of manslaughter if he recklessly causes death of individual); § 19.05 (stating person commits offense of criminally negligent homicide if he causes death of individual by criminal negligence). The jury found McCallum guilty of criminally negligent homicide. *See id.* § 19.05.

In *Crumpton v State*, No. PD-1634-07, 2009 WL 4640622, at *1 (Tex. Crim. App. Dec. 9, 2009), the Texas Court of Criminal Appeals was asked to review "the propriety of a deadly weapon finding in a judgment of guilt of the offense of criminally negligent homicide." In concluding that the deadly weapon finding was proper, the court held "a verdict of homicide necessarily is a finding that a deadly weapon was used [in the commission of the crime]." *Id.* The court noted that the statutory definition of "deadly weapon" includes "anything that in the manner of its use . . . is capable of causing death . . . ." *Id.* (citing TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2009). The court went on to explain:

> The statutory definition of "deadly weapon" includes "anything that in the manner of its use . . . is capable of causing death . . . ." [TEX.] PENAL CODE § 1.07(a)(17)(B). Having found that the defendant was guilty of [criminally negligent] homicide, the jury necessarily found that the defendant used something that in the manner of its use was capable of causing—and did cause—death. Therefore the verdict was an adequate basis for the trial court's entry of the deadly-weapon finding in the judgment.

*Id.*[3] Prior to *Crumpton*, there were only three instances in which the trial court could properly find the jury made an affirmative deadly weapon finding: (1) the indictment included a deadly weapon finding, and the jury found the defendant guilty as charged in the indictment; (2) the jury answered affirmatively to a special issue on the use of a deadly weapon; or (3) the deadly weapon was a deadly weapon per se or a firearm. *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985). *Crumpton* has now added to this list by allowing the trial court to find the jury made an affirmative deadly weapon finding by finding the defendant guilty of homicide. *See Crumpton*, 2009 WL 4640622, at *1.

Here, as in *Crumpton*, the jury found McCallum guilty of criminally negligent homicide. Under *Crumpton*, therefore, the jury necessarily made an affirmative finding that McCallum used a deadly weapon—namely, "the hand of the defendant . . . [which] caus[ed] Pribyl to fall and strike his head on the ground." The law is well-settled that both a hand and the ground can be deadly weapons—that is, objects capable of causing death. *See Lane v. State*, 151 S.W.3d 188, 192 (Tex. Crim. App. 2004) (holding hand can be deadly weapon); *Johnston v. State*, 150 S.W.3d 630, 639 (Tex. App.—Austin 2004, no pet.) (holding floor can be used as deadly weapon). Therefore, the jury's verdict finding McCallum guilty of criminally negligent homicide included a finding that McCallum used or exhibited a deadly weapon. Contrary to McCallum's assertion, the trial court did

---

[3] In *Crumpton*, the jury verdict also stated the jury found the defendant guilty as charged in the indictment, which expressly alleged the defendant committed the offense with a deadly weapon. The court of criminal appeals noted this too was a sufficient basis for the trial court's entry of the deadly weapon finding in the judgment. *Crumpton*, 2009 WL 4640622, at *1; *see also Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985) (holding trier of fact makes express determination that deadly weapon was used or exhibited during commission of offense when in verdict it finds applicant guilty as charged in indictment and indictment alleges deadly weapon).

not make the deadly weapon finding in violation of *Apprendi*. Accordingly we overrule McCallum's third issue.

### State's Cross Point

By way of cross point, the State asserts the trial court erred in failing to include an affirmative finding of deadly weapon in its judgment. We agree.

As discussed in issue three, by finding McCallum guilty of criminally negligent homicide, the jury affirmatively found he used a deadly weapon in the commission of the offense. *See Crumpton*, 2009 WL 4640622, at *1. However, the trial court neglected to reflect the deadly weapon finding in the judgment. Once the jury finds the defendant used or exhibited a deadly weapon during the commission of the offense, the trial court must enter in the judgment a finding that a deadly weapon was used or exhibited. *Ex parte Poe*, 751 S.W.2d 873, 875-76 (Tex. Crim. App. 1988) (en banc) (citing predecessor to article 42.12, section 3g(a)(2), which requires that affirmative findings under that section be made part of judgment); *see also State ex rel. Esparza v. Paxson*, 855 S.W.2d 170, 172 (Tex. App.—El Paso 1993, no pet.) (conditionally granting petition for mandamus and requiring trial court to enter judgment nunc pro tunc and include deadly weapon finding found by jury); TEX. CODE CRIM. PROC. ANN. art. 42.01(21) (Vernon Supp. 2009) (requiring that affirmative findings under article 42.12, section 3g(a)(2) of Code be made part of judgment). Section 3g(a)(2) of article 42.12 refers to deadly weapon findings and states with regard to such findings that "the trial court shall enter the finding in the judgment of the court." *Id.* art. 42.12, sec. 3(g)(a)(2). Accordingly, the trial court erred in failing to include the deadly weapon finding in its judgment.

Relying on *Hooks v. State*, 860 S.W.2d 110 (Tex. Crim. App. 1993), it has been asserted by appellants in other cases that reformation is improper because the trial court has discretion after the fact finder makes an affirmative deadly weapon finding about whether to enter a deadly weapon finding in the judgment. *See, e.g., Brooks v. State*, 900 S.W.2d 468, 474-475 (Tex. App.—Texarkana 1995, no pet.); *Martinez v. State*, 874 S.W.2d 267, 268-269 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). These assertions were rejected, and we agree with the reasoning of those courts.

In *Hooks*, the defendant was charged with aggravated assault by threat with a deadly weapon. 860 S.W.3d at 111. The trial court found the defendant guilty, but ordered her released on probation. *Id.* The State challenged the trial court's decision to place the defendant on probation, relying on article 42.12, section 3g(a)(2). *Id.* The court of appeals reversed the trial court's grant of probation. *Id.* On petition for discretionary review, the court of criminal appeals reversed and held that because the court had not entered the deadly weapon finding in the judgment, under the specific facts the probationary sentence was not void. However, *Hooks* involved a bench trial, and therefore the *judge* was the trier of fact. Moreover, *Hooks* relied on *Ex parte Lucke*, 742 S.W.2d 818 (Tex. App.—Houston [1st Dist.] 1987, no pet), in reaching its conclusion that article 42.12, section 3g(a)(2) did not bar probation for the appellant because the trial court had not entered an affirmative finding in the judgment. *Lucke* also involved a case of a plea before the court, and held that "the trial court, as trier of fact, simply declined to enter the additional affirmative finding in the judgment." *Lucke* at 820; *see also Johnson v. State*, 233 S.W.3d 420, (Tex. App.—Fort Worth 2007, pet. ref'd) (holding that where trial court is trier of fact and has made an affirmative deadly weapon finding,

it retains discretion to enter finding in judgment). Finally, the *Hooks* court cited *Poe* with approval, and *Poe* specifically held in the context of a jury trial that once the jury makes an affirmative deadly weapon finding, the trial court has no discretion and must enter the finding in the judgment. *Poe*, 751 S.W.2d at 875-76.

Here, the judge was not the trier of fact and the jury affirmatively found McCallum used a deadly weapon. Both *Poe* and article 42.12, section 3g(a)(2) of the code of criminal procedure make it clear that when the trier of fact makes an affirmative finding, "the trial court shall enter the finding in the judgment of the court." *Hooks* does not indicate that reformation of a judgment is no longer a proper remedy when the court has failed to enter an affirmative finding made by a jury in accordance with *Polk*, and now *Crumpton*. Further, *Hooks* did not overrule or expressly restrict *Polk*, *Poe*, or their progeny. *If Hooks* has made the entry of an affirmative finding discretionary, it has done so only in cases where the trial judge acts as the trier of fact. Accordingly, we, like the other appellate courts faced with this issue, do not find *Hooks* a bar to reformation in this case. *See Brooks*, 900 S.W.2d at 474-475; *Martinez*, 874 S.W.2d at 268-269.

A judgment may be reformed to reflect an affirmative finding that was made by a jury but not entered by the trial court. *Rische v. State*, 746 S.W.2d 287, 292 (Tex. App.—Houston [1st Dist.] 1988). An appellate court has the power to correct and reform a trial court judgment "to make the record speak the truth when it has the necessary data and information to do so." *Jackson v. State*, 288 S.W.3d 60, 64 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)); *Williams v. State*, 911 S.W.2d 788, 791 (Tex. App.—San Antonio 1995, no pet.) (same). The record shows the jury made a deadly weapon

finding, but the judgment signed by the trial court does not reflect that finding as required. *See Poe*, 751 S.W.2d at 875-76.  Accordingly, we sustain the State's cross point, and reform the trial court's judgment to reflect a deadly weapon finding.

### CONCLUSION

We overrule McCallum's appellate issues, sustain the State's cross point, and affirm the trial court's judgment as reformed.


Marialyn Barnard, Justice

Publish