# NO. 12-22-00268-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAMONTE DEANDRE SHEARS,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *DISTRICT COURT* |
| | § | *SMITH COUNTY, TEXAS* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | | |

## *MEMORANDUM OPINION*

Appellant, Damonte Deandre Shears, appeals his conviction for possession with intent to deliver cocaine. In five issues, Appellant contends that his trial counsel rendered ineffective assistance, challenges the sufficiency of the evidence to support his conviction, and alleges the trial court erroneously admitted evidence. We affirm.

### BACKGROUND

On March 18, 2021, Texas Department of Public Safety Trooper Donald Appleman was driving through the Butler College area of Tyler, Texas, attempting to locate Appellant. Appleman saw a GMC Yukon SUV that he believed to be driven by Appellant and confirmed his identity using law enforcement intelligence photographs. Thereafter, Appellant appeared to notice Appleman following him, stopped the SUV in the driveway of 2000 West Robbins Street, exited the vehicle, and appeared to be making a call on his cell phone. When Appleman approached, identified himself, and asked to speak with Appellant, Appellant fled on foot. Appellant ran through the yard on the property, jumped over a fence, and turned east into an easement beside the property.

Other law enforcement officers quickly responded to the scene and secured the area. About forty-five minutes after Appellant's flight, while walking the path Appellant took, Appleman and Corporal Jonathan Peters located a clear plastic bag containing a "cookie" of

crack cocaine and a large number of pills.[1] The bag was located at the northeast corner of the fence surrounding 1929 West Jackson Street, the property immediately to the south of 2000 West Robbins. There had been no foot traffic in the area between Appellant's flight and the discovery of the drugs, and Appleman noticed that the cocaine "cookie" was still wet when he found the plastic bag, indicating that it had been newly created. That same day, during his investigation, Appleman viewed footage from a doorbell camera belonging to the owner of the house on 1929 West Jackson, showing Appellant running across the front part of the house less than one minute after he fled from Appleman. The next day, Shakayla Shackleford, Appellant's girlfriend and the registered owner of the Yukon SUV that Appellant had been driving, called Appleman and told him that she loaned her vehicle to Appellant the previous day.

Law enforcement subsequently arrested Appellant and he was indicted by a grand jury for the offense of possession with intent to deliver a controlled substance, specifically cocaine, in an amount of more than four grams but less than 200 grams.[2] Appellant pleaded "not guilty," and this matter proceeded to a jury trial.

At trial, Appleman testified to the aforementioned details of his investigation, including that Appellant's behavior was consistent with a "heat run," wherein criminals in an area attempt to determine whether police are present in the area because of them. Defense counsel lodged a hearsay objection to Appleman's testimony regarding Shackleford's telephone statement, which the trial court overruled. Outside the jury's presence, Defense counsel re-urged a best evidence objection to Appleman's testimony regarding the doorbell camera video. The prosecution asserted that the footage no longer existed, because the video was not previously collected and the camera recorded over the footage. The trial court overruled defense counsel's objection. Thereafter, Appleman testified to what he saw on the video. Defense counsel again objected to Appleman's testimony about the contents of the doorbell camera video based on the best evidence rule. The trial court overruled this objection.

Corporal Peters testified that he responded to the scene to assist Appleman by securing the area and the vehicle while Appleman attempted to locate Appellant. He later accompanied Appleman to walk the path Appleman suspected Appellant took on foot, during which they

---

[1] The identity of the "cookie" was later confirmed by laboratory testing, which showed that it contained cocaine and weighed 13.19 grams.

[2] TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2023).

located the plastic bag containing the cocaine and pills. Peters also viewed the doorbell camera video during the investigation, and although he did not recognize Appellant because he had not seen him before, Peters testified that Appleman acknowledged that Appellant was the person in the video.

Shackleford testified that she was still dating Appellant and had known him for over seven years. She owned a gold GMC Yukon and she sometimes permitted Appellant to drive it, but she could not remember whether she allowed him to drive the vehicle in March 2021. She did not remember either the police contacting her because the Yukon had been towed or speaking to Appleman on the phone. Shackleford cited her use of antidepressants as the reason she could not remember these events. Thereafter, the State recalled Appleman to repeat his testimony about the March 19 telephone conversation with Shackleford, to which defense counsel did not object.

Detective Aneas Sutton of the Texas Anti-Gang Center testified that prior to March 18, he provided Appleman information and recommended that he locate Appellant. Sutton also obtained the arrest warrant for Appellant after the events of March 18. He stated that in his experience as a narcotics-focused officer, the crack cocaine in the clear bag would produce about 13 "servings" and cost anywhere from $750.00 to $1,300.00. The multicolored pills from the bag, which Sutton's field test presumptively determined to be ecstasy or MDMA, weighed approximately 100 grams. Sutton testified that each pill would likely sell for around $20.00.

The jury found Appellant "guilty" of possession of cocaine with intent to deliver and assessed punishment of forty-five years' imprisonment. This appeal followed.

INEFFECTIVE ASSISTANCE OF COUNSEL

In Appellant's first, second, and third issues, he complains that trial counsel rendered ineffective assistance by failing to object to hearsay evidence and improper predicate, and to request a limiting instruction as to hearsay evidence. Appellant further asserts that the cumulative impact of trial counsel's errors denied him effective assistance of counsel.

**Standard of Review and Applicable Law**

In reviewing an ineffective assistance of counsel claim, we follow the United States Supreme Court's two-pronged test found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986). Under the first prong of the *Strickland* test, an appellant must show that counsel's

performance was "deficient." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). A deficient performance occurs when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. To be successful, an appellant must show that counsel's representation fell below an objective standard of reasonableness. *Id.*, 466 U.S. at 688, 104 S. Ct. at 2064; *Tong*, 25 S.W.3d at 712.

Under the second prong, an appellant must affirmatively show that counsel's deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999). The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref'd). It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings; he must show that there is a reasonable probability that, but for his attorney's errors, the verdict or the extent of his punishment would have been less. *See id.*; *see also Bone v. State*, 77 S.W.3d 828, 837 (Tex. Crim. App. 2002). The appellant must prove both prongs of the *Strickland* test by a preponderance of the evidence to prevail; failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Tong*, 25 S.W.3d at 712; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Review of trial counsel's representation is highly deferential. *Tong*, 25 S.W.3d at 712. We begin with a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The appellant bears the burden to overcome this presumption by presenting evidence showing *why* trial counsel did what he did. *Id.*; *Tong*, 25 S.W.3d at 712. An appellant cannot meet this burden if the record does not affirmatively demonstrate the alleged ineffectiveness. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (a record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his actions. *See Bone*, 77 S.W.3d at 836. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require

4

impermissible speculation by the appellate court. ***Gamble v. State***, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.); *see also* ***Lopez v. State***, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) ("In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation.").

## Failure to Object to Hearsay

Appellant asserts that trial counsel was deficient because he failed to object to Appleman's testimony that Shackleford told him she loaned Appellant the vehicle he was driving on the date of the offense. Appellant's trial counsel raised a hearsay objection to this testimony the first time that Appleman testified (although after Appleman had already answered the question), which the trial court overruled. Counsel did not object on the basis of hearsay the second time Appleman testified about the phone conversation, when the State recalled him to impeach Shackleford.

To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed error in overruling the objection had trial counsel objected. *See* ***Vaughn v. State***, 931 S.W.2d 564, 566–67 (Tex. Crim. App. 1996); ***Donald v. State***, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Failure to object to admissible evidence does not constitute ineffective assistance of counsel. ***McCallum v. State***, 311 S.W.3d 9, 16 (Tex. App.—San Antonio 2010, no pet.).

Any party, including the party that called the witness, may attack a witness's credibility. TEX. R. EVID. 607. One permissible way of attacking a witness's credibility is through impeachment by prior inconsistent statements. *See* TEX. R. EVID. 613(a). Rule 613 requires that the party intending to examine a witness about a prior inconsistent statement must tell the witness the contents of the statement, the time and place of the statement, and the person to whom the witness made the statement. ***Id.*** at (a)(1). Then, the witness must have the opportunity to explain or deny the statement. ***Id.*** at (a)(3). If the witness does not "unequivocally admit" making the statement upon examination, extrinsic evidence of the prior inconsistent statement is admissible (including otherwise-inadmissible hearsay). ***Id.*** at (a)(4); ***Willover v. State***, 70 S.W.3d 841, 846 n.8 (Tex. Crim. App. 2002).

The record reflects that counsel for the State informed Shackleford of the contents of her statement, the time and place she said it, and to whom she said it. She testified that she did not

5

recall ever speaking to Appleman on the phone, which is not an unequivocal admittance of the statement. Therefore, under Rule 613, the State was permitted to introduce extrinsic evidence to impeach Shackleford, and it did so through Appleman's testimony about the conversation with Shackleford. *See* TEX. R. EVID. 613(a). Without showing that the evidence to which trial counsel did not object was inadmissible, Appellant cannot prove that his trial counsel performed deficiently in failing to object to same, and therefore cannot prove the first prong of the *Strickland* test. *See Donald*, 543 S.W.3d at 478. Consequently, we overrule this portion of Appellant's first issue.

## Failure to Request Limiting Instruction

Appellant argues that trial counsel was deficient by failing to request an instruction limiting the jury's consideration of Appleman's impeachment testimony only for its reflection on Shackleford's credibility, and not for the truth of the matter asserted.

Generally, if a defendant does not request a limiting instruction at the time evidence is admitted, then the evidence is admitted for all purposes, and the trial judge has no obligation to limit the use of that evidence later in the jury charge. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007). But defense counsel's failure to request a limiting instruction is not, by itself, deficient performance. *Agbogwe v. State*, 414 S.W.3d 820, 837 (Tex. App.—Houston [1st Dist.] 2013, no pet.). If a reviewing court can imagine a strategic motive to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's point of error. *Bone*, 77 S.W.3d at 833 n. 13.

Here, the record is silent as to trial counsel's defensive strategy or the reasoning for his failure to request a limiting instruction on Appleman's impeachment testimony, and we may not speculate as to those reasons. Generally, a silent record cannot defeat the strong presumption that counsel was effective. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007), *but see Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (appellate court should not find deficient performance from undeveloped record unless challenged conduct "so outrageous that no competent attorney would have engaged in it"); *Andrews v. State*, 159 S.W.3d 98, 102-03 (Tex. Crim. App. 2005) (reversing conviction "in a rare case" on basis of ineffective assistance of counsel). The record does not show that Appellant's trial counsel engaged in such outrageous conduct that no competent attorney would have engaged in it. Multiple Texas courts have held that defense counsel's choice not to request a limiting instruction on certain evidence may well

be the product of trial strategy. *See **Delgado v. State***, 235 S.W.3d 244, 254 (Tex. Crim. App. 2007) (defense counsel may decide not to request a limiting instruction so as not to emphasize unfavorable evidence); ***Villalva v. State***, No. 08-13-00219-CR, 2015 WL 4134531, at *6 (Tex. App.—El Paso July 8, 2015, no pet.) (mem. op., not designated for publication) (trial attorney may reasonably decide, as part of trial strategy, not to highlight objectionable testimony by requesting limiting instruction). Accordingly, we cannot conclude that counsel's performance fell below an objective standard of reasonable professional assistance. ***Bone***, 77 S.W.3d at 833 n. 13. Because Appellant has not made the showing required for the first prong of the ***Strickland*** test, we overrule this portion of Appellant's first issue.

**Improper Predicate Objection**

Appellant argues in his second issue that  trial counsel was deficient because he failed to object to "the introduction of a verbal description of [the] 'doorbell camera' photographic evidence that was not properly supported by predict [sic] testimony[.]" Appellant later clarifies that trial counsel should have objected specifically because the State did not establish the authenticity of the original doorbell camera footage about which Appleman testified, and counsel's failure to do so amounted to ineffective assistance.

Any proffered item of evidence may be authenticated under Rule 901 of the Texas Rules of Evidence by "evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Conclusive proof of authenticity before allowing admission of disputed evidence is not required. ***Fowler v. State***, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). "Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." ***Tienda v. State***, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Rule 901's standard for authentication has been described as a "liberal standard of admissibility." ***Fowler***, 544 S.W.3d at 849. Consistent with the concept that counsel is not required to take an action that would be futile, counsel's failure to object to a lack of foundation is not ineffective assistance unless the record shows that the State would not have been able to lay proper foundation. ***Holland v. State***, 761 S.W.2d 307, 318–19 (Tex. Crim. App. 1988); ***Darnell v. State***, No. 14–11–00437–CR, 2012 WL 626318, at *2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2012,

7

no pet.) (mem. op., not designated for publication).[3] We examine counsel's actions from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight. ***Ex parte Jimenez***, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012). Although generally the original recording is required to prove the content of a video recording, other evidence of the contents of a recording is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith. TEX. R. EVID. 1002, 1004(a).

In this case, counsel represented to the trial court that the footage from the doorbell camera had been overwritten by the camera's usual operation, because it saves new footage over older footage after a certain period of time, and the video of Appellant was not collected before it was overwritten. Appellant did not assert that the recording was destroyed in bad faith rather than inadvertently, and the record contains no evidence to support such a finding. Appleman testified that he personally noticed the doorbell camera at the house located at 1929 West Jackson Street, and the homeowner allowed him to view the video captured by the camera. The camera was triggered to record because Appellant ran past the front of the house. Appleman was familiar with Appellant's appearance generally and on March 18 and recognized him in the footage as the same person he saw driving the gold Yukon. Peters similarly testified that he viewed the doorbell camera recording with Appleman and that the homeowner voluntarily showed them the video, corroborating Appleman's testimony as to the circumstances surrounding their viewing of the recording. The evidence presented by the State, both direct and circumstantial, satisfied the requirements of Rule 901 and served to authenticate the original recording. *See **Wood v. State***, 18 S.W.3d 642, 647 (Tex. Crim. App. 2000) (testimony of person who viewed destroyed videotape and could identify the people depicted sufficient for authentication). Moreover, even if the State's authentication evidence as actually presented at trial was insufficient, Appellant does not contend and the record does not show that the State

---

[3] Multiple other Texas courts have similarly held that trial counsel's failure to object based on lack of foundation is not ineffective assistance unless the record shows that the State would not have been able to lay proper foundation. *See, e.g.*, ***F.R. v. Texas Dep't of Fam. & Protective Servs.***, No. 03-17-00487-CV, 2017 WL 6503082, at *8 (Tex. App.—Austin Dec. 15, 2017, no pet.) (mem. op., not designated for publication) ("Assuming without deciding a business record affidavit would have been insufficient, there is no indication that the Department would not have provided adequate foundation in another way[.]"); ***Coker v. State***, No. 08-02-00014-CR, 2004 WL 1194362, at *3 (Tex. App.—El Paso May 27, 2004, pet. ref'd) (mem. op., not designated for publication) ("There is no evidence in the appellate record that had trial counsel made [foundation] objections the State would have been unable to meet it."); ***Carrillo v. State***, No. 13-01-649-CR, 2004 WL 34857, at *8 (Tex. App.—Corpus Christi Jan. 8, 2004, pet. ref'd) (mem. op., not designated for publication) (overruling ineffective assistance point based on second ***Strickland*** prong because, "[h]ad trial counsel objected, the State could have presented additional evidence properly authenticating the [item].")

could not have provided adequate foundation through other, additional evidence. ***Darnell***, 2012 WL 626318, at \*2.

Because Appellant did not file a motion for new trial, the record is silent as to counsel's reasoning for choosing not to object or failing to object to Appleman's testimony based on improper predicate. To satisfy the first prong of ***Strickland*** on a silent record, it must be apparent "that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." ***Lopez***, 343 S.W.3d at 143. Failing to object to admissible evidence is not ineffective assistance of counsel, but even counsel's decision not to object to *arguably* admissible evidence may be a matter of sound trial strategy. ***Thompson***, 9 S.W.3d at 814; ***Jones v. State***, 950 S.W.2d 386, 389 (Tex. App.—Fort Worth 1997, pet. ref'd). In this case, it is possible that trial counsel reasonably decided *at that moment* that the testimony was not inadmissible on the basis of improper predicate, or that raising an additional objection on this basis would appear to the jury to be trying the case on technicalities. ***Fuller v. State***, 224 S.W.3d 823, 831 (Tex. App.—Texarkana 2007, no pet.). Whether counsel's decision was the best possible trial strategy in hindsight is not an appropriate inquiry. ***Ex parte Kelley***, No. WR-87,470-01, 2019 WL 5788034, at \*35 (Tex. Crim. App. Nov. 6, 2019) (mem. op., not designated for publication).

Thus, under the circumstances of this case, we cannot find that counsel's performance was deficient for purposes of proving the first prong of ***Strickland***. *See **Lopez v. State***, 462 S.W.3d 180, 185 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We overrule Appellant's second issue.

## Cumulative Effect of Errors

In his third issue, Appellant argues that the cumulative effect of counsel's errors constitutes ineffective assistance. The Texas Court of Criminal Appeals has extended the concept of "cumulative error" to ineffective assistance of counsel claims. *See **Chamberlain v. State***, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). However, there is no authority for the proposition that the cumulative effect of non-errors requires reversal. ***Id.*** Additionally, if an appellant's individual claims of error lack merit, then there is no possibility of cumulative error. ***Gamboa v. State***, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009).

Appellant does not attempt to explain how each of defense counsel's alleged deficiencies cumulatively prejudiced the outcome of the case. Rather, he simply argues that the sum total of the errors resulted in an "unfair" and "unjust" verdict and sentence. We have already addressed Appellant's complaints against his trial counsel and concluded that they are lacking in merit—counsel's actions were either not deficient, or those actions could not have prejudiced Appellant. Accordingly, we cannot conclude that this is one of those rare cases wherein the cumulative effect of ineffective assistance warrants reversal of the judgment on direct appeal. *See id.* We overrule Appellant's third issue.

**LEGAL SUFFICIENCY OF EVIDENCE**

In his fourth issue, Appellant contends that the evidence was insufficient to support a finding beyond a reasonable doubt that he knowingly possessed the bag of crack cocaine.

## Standard of Review

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See **Jackson v. Virginia***, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979); ***Laster v. State***, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). In Texas, the ***Jackson v. Virginia*** standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. ***Whatley v. State***, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); ***Brooks***, 323 S.W.3d at 898–99 (Tex. Crim. App. 2010). Juries are permitted to draw multiple reasonable inferences from direct or circumstantial evidence. ***Anderson v. State***, 416 S.W.3d 884, 891 (Tex. Crim. App. 2013). When the record supports conflicting inferences, a reviewing court must presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. ***Clayton v. State***, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances; the duty of a reviewing court is to ensure that the evidence presented supports a conclusion that the defendant committed the crime charged. *See **Hernandez***

*v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

## Applicable Law

To prove unlawful possession of a controlled substance, the State must prove that Appellant (1) exercised actual care, control, and management over the contraband and (2) knew the substance in his possession was contraband.[4] *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.) (citing *King v. State*, 895 S.W.2d 701, 702 (Tex. Crim. App. 1995)). When contraband is not found on the accused's person, or is not in the exclusive possession of the accused, additional facts must affirmatively link the accused to the contraband so that one may reasonably infer that the accused exercised control over it. *Smith v. State*, 56 S.W.3d 739, 747 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

A nonexclusive list of factors relevant to knowing possession—or "affirmative links"— includes (1) the defendant's presence during the search, (2) whether the contraband was in plain view, (3) the contraband's proximity and accessibility to the defendant, (4) whether the defendant was under the influence of narcotics, (5) whether the defendant possessed other contraband, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia was present, (11) whether the defendant owned or had a right to possess the place where contraband was found, (12) whether the place where the drugs were found was enclosed, (13) whether the

---

[4] The State must also prove that Appellant possessed the crack cocaine with intent to deliver. Circumstances considered by the courts in determining "intent to deliver" include (1) the nature of the location where the defendant was arrested, (2) the quantity of the drugs the defendant possessed, (3) the manner of packaging the drugs, (4) the presence or absence of drug paraphernalia (for use or sale), (5) whether the defendant possessed a large amount of cash in addition to the drugs, and (6) the defendant's status as a drug user. *Garrett v. State*, 161 S.W.3d 664, 671 (Tex. App.—Fort Worth 2005, pet. ref'd). Appellant does not contest the legal sufficiency of the evidence for a finding of intent to deliver.

defendant was found with a large amount of cash, and (14) whether the defendant's conduct indicated consciousness of guilt. ***Tate v. State***, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (quoting ***Evans v. State***, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006)). Further, the presence of a large quantity of contraband may be a factor affirmatively linking an appellant to the contraband. ***Espino-Cruz v. State***, 586 S.W.3d 538, 544 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd).

An affirmative link is a shorthand expression of what must be proven to establish that a person possessed a controlled substance knowingly or intentionally. ***Brown v. State***, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). In other words, "the concept of an affirmative link is simply one way to describe the sufficiency of circumstantial evidence to prove intent to possess drugs." ***Brochu v. State***, 927 S.W.2d 745, 751 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (citing ***Brown***, 911 S.W.2d at 747). Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in ***Jackson***—whether, based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, the jury was rationally justified in finding guilt beyond a reasonable doubt. ***Tate***, 500 S.W.3d at 414; *see **Jackson***, 443 U.S. at 318-19, 99 S. Ct. at 2789. "It is ... not the number of links that is dispositive, but rather the logical force of all the evidence, direct and circumstantial." ***Evans***, 202 S.W.3d at 162.

## Analysis

Appellant argues that the State's evidence on the element of care, control, and management was legally insufficient to support the jury's finding of guilt. In support of his argument, he asserts that law enforcement did not see him carrying or discarding any narcotics or plastic bags, no fingerprints were found on the narcotics or the plastic bag, and law enforcement found no narcotics, paraphernalia, or large sums of money when they searched the Yukon. Appellant further argues that the State did not develop testimony as to "how long the narcotics had been in its [sic] location before Appleman found them."

Several factors link Appellant to the contraband and support a finding of knowing possession. The bag containing the contraband was in plain view on the ground when law enforcement found it, and the bag contained a very large amount of crack cocaine. Appleman saw Appellant running toward the area where he found the bag, and Appellant's path of flight was further confirmed by Appleman's review of the video recording from the doorbell camera. Appellant immediately fled from Appleman on foot when Appleman approached and identified

12

himself. Even before running from Appleman, Appellant drove erratically when he noticed Appleman following him, parked at a house to which he had no connection, and made prolonged eye contact with Appleman before fleeing, all indications of a consciousness of guilt. That the "cookie" of crack cocaine had been newly created, and thus could not have been in the yard where the bag was found for very long, is additional evidence linking Appellant to the drugs.

As Appellant points out, evidence pertaining to several possible affirmative links was either not present or not discussed at trial. But the State is not required to establish all possible affirmative links or present evidence on each factor, and the absence of some factors is not evidence of innocence that must be weighed against the other factors present. *Espino-Cruz*, 586 S.W.3d at 546. Additionally, that Appellant ran so that Appleman could not see him significantly lessens the importance that Appleman failed to see Appellant drop the bag. Accordingly, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could find beyond a reasonable doubt that Appellant knowingly possessed crack cocaine. We overrule Appellant's fourth issue.

BEST EVIDENCE OBJECTION

In his fifth issue, Appellant argues that the trial court abused its discretion in admitting Appleman's testimony about the contents of the doorbell camera video over Appellant's best evidence objection.

## Standard of Review and Applicable Law

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Manuel*, 357 S.W.3d at 74.

As previously discussed, Texas Rule of Evidence 1002 provides that an original writing, recording, or photograph is required to prove its content unless the Rules of Evidence or other law provides otherwise. TEX. R. EVID. 1002. Although generally the original recording is required to prove the content of a video, other evidence of the content of a recording, such as testimony from a person who saw the video, is admissible if all originals are lost or destroyed (unless the proponent lost or destroyed the originals in bad faith). *Id.* at 1004(a); *Wood*, 18 S.W.3d at 647.

**Analysis**

Outside of the jury's presence, Defense counsel re-urged Appellant's best evidence objection to Appleman's testimony regarding the video. At that time, counsel for the State represented to the trial court that the doorbell camera footage had been destroyed by the standard operation of the camera itself, because it records over older footage after a certain period of time, and the video of Appellant was not collected before it was overwritten. Appellant did not argue that the recording was destroyed in bad faith rather than inadvertently. Accordingly, the trial court was within its discretion to determine that the original recording was unavailable as lost or destroyed. *See Howell v. Howell*, No. 13-10-00687-CV, 2013 WL 784542, at *7 (Tex. App.—Corpus Christi Feb. 28, 2013, no pet.) (mem. op., not designated for publication) (representation of counsel that document was not obtainable sufficient for finding that document had been lost or destroyed). Consequently, the trial court's ruling that Appleman's testimony was admissible as "other evidence" of the video's contents was well within the zone of reasonable disagreement, and thus not an abuse of the trial court's discretion. TEX. R. EVID. 1004(a); *Wood*, 18 S.W.3d at 647; *see also Ellis v. State*, 517 S.W.3d 922, 931 (Tex. App.—Fort Worth 2017, no pet.) (purpose of best evidence rule is to secure production of the best *obtainable* evidence of document's contents, if the document cannot as a practical matter be produced). We overrule Appellant's fifth issue.

**DISPOSITION**

Having overruled each of Appellant's five issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered June 14, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

JUNE 14, 2023

NO. 12-22-00268-CR

**DAMONTE DEANDRE SHEARS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1718-21)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*